UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| **BITUMINOUS CASUALTY CORPORATION**, ET AL. | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | No. 2:03-CV-353 |
| **FRIZZELL CONSTRUCTION COMPANY, INC.,** ET AL. | ) ) ) ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION

This plaintiffs' declaratory judgment action is before the Court to address the motion for summary judgment filed by the plaintiffs. [Doc. 14].

I. **FACTUAL BACKGROUND:**

Viewing the facts in the light most favorable to the defendants, the following sets forth the background of this dispute:

Frizzell Construction Company, Inc. ("Frizzell") was initially issued a commercial lines policy of insurance by Bituminous Casualty Corporation and Bituminous Fire and Marine Insurance Company ("Bituminous") on July 1, 1997, which coverage was renewed by various policies through July 1, 2003. On each of the policies, the defendant, Summitt BSR ("Summitt"), a wholly owned subsidiary of

Frizzell, was named as an additional insured. In addition to the commercial lines coverage, Frizzell also maintained umbrella policies with the plaintiffs, which policies also named Summitt as an additional insured.

Frizzell, acting as general contractor, began construction of a Holiday Inn Express, owned by Rivermont Hotels, LLC ("Rivermont"), in 1996. Summitt was a roofing contractor on the project and W. D. Harless Company, Inc. ("Harless") was a subcontractor. Construction was completed in 1997 and various workmanship defects were alleged by Rivermont throughout 1998.

On September 7, 1999, suit was filed by Harless in the Circuit Court for Unicoi County, Tennessee against Frizzell, Summitt, and Rivermont seeking damages for materials and labor furnished on the Holiday Inn Express project, and demanding that a levy be made on the property and that the property be sold at public auction to satisfy the lien. This lawsuit was settled in 2002 when Frizzell and Harless entered into a "mutual release agreement," though Bituminous did not approve the settlement. Under this agreement, Frizzell agreed to hold Harless harmless and indemnify it from any claims asserted by Rivermont arising out of the performance of the subcontractor work performed by Summitt, or the construction of the Holiday Inn Express in Erwin, Tennessee.

Rivermont had also demanded arbitration with Frizzell and Summitt in 1998 due to continuing problems with the hotel. The arbitration matter was settled

2

with an agreement between Frizzell and Rivermont, pursuant to which Frizzell agreed to perform additional work on the hotel, including work on the roof.

The second lawsuit was filed against Frizzell and Summitt on August 26, 2003 in the Circuit Court for Unicoi County, Tennessee by Rivermont. Rivermont also named as defendants Dryvit Systems, Inc., Ken Roth, Architects, Inc., Harless, Masters and Sons, Co., Inc., Simonton Windows, and CNA Insurance Companies. The complaint was later amended to remove CNA Insurance and name National Fire Insurance Company as the party having issued a performance bond to Frizzell. That lawsuit is currently pending, and alleges the following causes of action:

1. Negligence
2. Breach of expressed and implied warranties
3. Breach of contract
4. Fraud
5. Fraudulent concealment

The suit seeks compensatory and punitive damages as well as incidental and consequential damages.

While it is undisputed that the defendants requested a defense and indemnity from Bituminous, some dispute exists as to the extent of notice provided to Bituminous about the two lawsuits. But as will be further explained in this opinion, such dispute is inconsequential to the outcome of the case. Bituminous appointed defense counsel under a reservation rights on July 28, 2003.

On August 14, 2003, National Fire Insurance Company filed its answer to

3

the second lawsuit, and filed a cross-claim against Frizzell based upon a performance bond it issued to Frizzell. The cross-claim seeks relief and/or indemnity for breach of contract for indemnity and common law indemnity. Harless also filed a cross-claim alleging that the mutual release agreement in the original suit obligates Frizzell to indemnify and hold Harless harmless from any damages in the second lawsuit. Harless seeks to enforce the mutual release agreement and demands that Frizzell defend it and pay any judgment rendered against it. Frizzell also presented these cross-claims to Bituminous with a request for indemnity and defense.

Bituminous filed this declaratory judgment action seeking a declaration that under the terms of its policy, it is not required to defend Frizzell or Summitt from the allegations of the second lawsuit.

## II. STANDARD OF REVIEW:

Summary judgment is appropriate when "there is no genuine issue of material fact." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of proving that no material facts exist, and the court must draw all inferences in a light most favorable to the non-moving party. A court may grant summary judgment when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233,

4

236 (6th Cir.1992) (citations omitted).

In accordance with long standing summary judgment principles, this Court must construe the evidence in this record most favorably for the defendants because they are the litigants opposing summary judgment. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *Scott v. Clay County*, 205 F.3d 867, 871 (6th Cir.2000). As explained by the Sixth Circuit in *Scott*,

> "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... <u>The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor</u>.*" Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted). See also *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir.1994). (emphasis added)

*Id*. at 871.

### III. DISCUSSION:

The parties agree that the pertinent language of the policies is substantially similar and provides as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**   **Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit"

5

seeking those damages. However, we will hae no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .

    b.    This insurance applies to "bodily injury" and "property damage" on if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2)    The "bodily injury" or "property damage" occurs during the policy period.

The following definitions are applicable to construction of all insuring agreements from the Commercial Lines policies:

"Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physical injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Occurrence" is defined as follows:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Both the umbrella policies and the commercial lines policies define the

6

terms "occurrence" and "property damage" in the same way and contain similar language in the insuring provisions.

The defendants concede that the Bituminous policies provide coverage only for "property damages" caused by a "occurrence," as those terms are defined in the policies. Under both policy forms, "occurrence" is defined as an "accident." It is the defendants' primary argument that the claims made against it fall within the policy's coverage, and require Bituminous to defend, due to the allegations in the complaint seeking incidental and consequential damages. The basic crux of the allegations in the second lawsuit are that water infiltration into a hotel building constructed by the defendants has caused damages to the hotel. In addition to the expected breach of contract and warranty claims, the construction companies have been charged with negligence in their workmanship, and are charged not only with the cost of correcting their alleged faulty workmanship, but with damages to the hotel caused by the infiltration of water resulting from their alleged faulty workmanship.

In arguing that the underlying lawsuit does not allege property damage arising from an occurrence, the plaintiffs rely heavily upon *State Auto Insurance Companies v. Gordon Construction Company, Inc.*, 2001 W.L. 513884 (Tenn. Ct. App. 2001). In *State Auto*, after a homeowner's house was damaged by a tornado, her homeowner's insurance carrier recommended that she hire Gordon Construction, Inc. to make necessary repairs. A dispute arose between the homeowner and Gordon

7

concerning Gordon's work, cumulating in a lawsuit alleging breach of contract and breach of express implied warranties, which sought reimbursement of the amounts paid to Gordon for its services and incidental and consequential damages occasioned by Gordon's failure to complete its work in a workmanlike manner.

Gordon contacted its commercial liability insurance carrier, State Auto, demanding that it defend Gordon in a lawsuit. Like the policy in the case at hand, Gordon's policy provided for coverage only where there was alleged property damage caused by an occurrence. Additionally, like the policy at hand, occurrence was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." And further, like the defendants before this Court, Gordon argued that plaintiff's allegations of incidental and consequential damages brought the lawsuit within the realm of the policy coverage, and required defense.

In denying Gordon's argument that State Auto owed him a duty to defend, the court recognized that:

> any 'consequential damages' sought by Glenn flow purely from Gordon Construction's failure to perform its work according to the contract. While Glenn's complaint seeks "incidental and consequential damages," she does not allege injury to person or property arising out of Gordon's work. She alleges only that Gordon failed to do its work properly. The insurance policy issued by State Auto insures "property damage" caused by an "occurrence." The policy defines "occurrence" as "an accident." As the Tennessee Supreme Court stated in *Vernon Williams*, the commercial general liability policy "does not cover an accident of faulty

8

> workmanship but rather faulty workmanship which causes an accident."

*Id.*

The holding of the *State Auto* court is consistent with the recognized purpose of a general liability insurance policy recognized by the Tennessee Supreme Court in *Vernon Williams and Son Constr., Inc. v. Continental Ins. Co.*, 591 S.W. 2d 760, 764 (Tenn. 1979), in which the court held that the purpose of the policy is to cover

> [T]ort liability for physical damages to others and not contractual liability at the insured for economical loss because the product or completed work is not that for which the damaged person bargained.
>
> * * *
>
> [T]he risk intended to be insured by a comprehensive general liability policy is faulty workmanship and materials which cause a tort liability to persons other than those to whom contractual obligation of workman like performance is due.

*Id.* at 763.

Again, like the defendant in *State Auto*, the defendants seek to find distinction in this case by relying upon *Marsh Furniture Co. v. Pennsylvania Mfrs. Ass'n. Ins. Co.*, 1996 W.L. 328713 (Tenn. Ct. App. 1996). While the *Marsh Furniture* court did determine that the insurer had a duty to defend where the plaintiff in the underlying suit sought "consequential damages," *Marsh Furniture* is clearly distinguishable from the case at hand. *Marsh Furniture* involved a breach of contract

9

action for the installation of kitchen cabinets which emitted unacceptable levels of formaldehyde vapor. The *Marsh Furniture* case involved the sale of kitchen cabinets which were defective, which was governed by the Tennessee version of the Uniform Commercial Code, codified in *Tenn. Code Ann.* § 47-2-715, rather than common law negligence. Further, the homeowner sought diminution in the value of the home due to the excessive emissions of formaldehyde vapor, claiming that it constituted property damage. Like the *State Auto* court, this Court **FINDS** that the *Marsh Furniture* case is clearly distinguishable from the case at hand, as the consequential damages sought by the plaintiff in the underlying suit flow from the defendants' alleged failures to perform its work in constructing the hotel properly.

The defendants urge the Court to delay determining policy coverage until after the resolution of the underlying suit, arguing that the incidental and consequential damages are not specified in the complaint and that the consequential damages are "potentially covered by the Bituminous policies, and will be determined in the underlying suit.

> It is accepted in the overwhelming majority of jurisdictions that the obligation of the liability insurance company to defend an action brought against the insured by a third party is to be determined *solely* by the allegations contained in the complaint in that action . . . In any event the pleading test for determination of the duty to defend is based exclusively on the facts as *alleged* rather than on the facts as they actually are...

10

*St. Paul Fire and Marine Ins., Co. v. Torpoco*, 879 S.W. 2d 831, 835 (Tenn. 1994). The facts as alleged in the complaint and cross-claims all flow from the defendants' alleged failure to perform their work in the proper manner. The Court need not, and should not look beyond the complaint and cross-claim on this issue. Accordingly, the Court **FINDS** that the claims alleged against the defendants in the underlying suit do not seek "property damage" resulting from an "occurrence" as those terms are defined in the policies of insurance. Therefore, the plaintiffs' motion for summary judgment will be **GRANTED**.

   ENTER:

               s/J. RONNIE GREER
               UNITED STATES DISTRICT JUDGE